## HEALTH OFFICERS AND THEIR COMPENSATION.*

[Circuit Court of Stark County.]

STATE, EX REL MILLER, v. COUNCIL OF MASSILLON.

Decided, February Term, 1902.

*Health Officer—Appointment of, Mandatory—Not in the Interest of the Locality only—But a Requiremnet for the Benefit of the State at Large—Does not Fall Within the Provisions of Section 1717— Prohibiting Increase of Salary of an Officer During his Term— Creation of a Board of Health also Mandatory—Provision for Expenses of Board and Health Officer's Salary—Such Services and Expenses do not Fall within Section 2702—Appointive and Elective Incumbents of Office—Mandamus.*

1. It is mandatory upon council to create a board of health, and it is mandatory upon a board of health to appoint a health officer and fix his salary, and the necessary appropriation to meet the expense must be made.

2. A health officer does not come within the purview of Section 1717, prohibiting an increase of salary of an officer during his term.

3. Nor does Section 2702, providing for the issuing of a certificate that the necessary funds are on hand before liability is incurred, apply to the salary of a health officer or to the expenses of a board of health; and mandamus will lie to compel an appropriation for such salary and expenses.

VOORHEES, J.; DOUGLASS, J., and DONAHUE, J., concur.

This cause is a proceeding in mandamus and comes into this court on appeal. There is but little controversy on the facts of the case, and such facts as we have are submitted to the court on an agreed statement, reduced to writing, and for the purpose of the decision it will not be necessary to refer to them in many instances, as we deem the question that is submitted more a question of law than a question of fact.

There are two primary questions submitted for the consideration of the court. The first question is, whether the relator was a legal officer or employe of the board of health of that city, and

*For holding of the Supreme Court that a health officer is not an employe as that word is used in Section 189 of the Municipal Code of 1902, see 69 O. S., p. —— (OHIO LAW REPORTER, Vol. 1, page 766).

168   CIRCUIT COURT REPORTS—NEW SERIES.

State, ex rel Miller, v. Council of Massillon. [Vol. II, N. S.

the board of health having increased his salary while he was then in office, whether that could be legally done and would be such an act as would lay a foundation in his favor for service at the increased rate fixed by the board of health.

The second question is, whether the council of that city would be compelled to issue its order or make an appropriation for the payment of his services, in the absence of the certificate from the proper officer that there were funds on hand for the payment of his services at the time the liability was increased.

Perhaps I stated the propositions in the reverse order in which they were presented, but we think this would be the logical arrangement of the question that is properly before the court.

The first contention then is, could the board of health increase his salary while he was still in the employ of the board? That depends on the nature of his office or employment. There is no difficulty in the proposition of law that an officer can not receive the benefits of an increase in his salary during the term of his office; and that does not necessarily depend upon an elective office, but it also reaches an appointee to an office. But before passing upon that proposition we think that the word "appointment" has significance. A person is elected to an office for a term, there may be a vacancy in the office, then that office may be filled by appointment; but such an appointee would stand in the same relation that the officer who was elected would stand, and can not receive an increase of salary during the unexpired term of that office. But that is not this case.

What is the office of this officer or appointee who was appointed by the board of health? He is called a "health officer." But has he a term of office? That would be the first question.

The statute now applies to cases where there is an increase during the term. The word "term" has significance, as we think, under that section of the statute. It simply means to limit. That is, during the period that the office is limited, during that period his salary shall not be increased. But in this case there is no limit fixed by law. It is at the pleasure of the board of health that gives the health officer his position. It is their pleasure. It is not a term, for the reason there is no limit to it. It may be likened unto a tenancy at will, not a term, because it has no limi-

tation. Therefore, it would be difficult to bring such an employe within the terms of Section 1717, Revised Statutes, prohibiting an increase of salary of an officer during his term, whether he be elected or whether he be appointed. We think that this is the true meaning of Section 2115, Revised Statutes.

"The board shall appoint a health officer, who shall furnish his name and address and such other information as may be required by the state board of health; and shall appoint a clerk, and may appoint as many ward or district physicians as it may deem necessary for the care of the sick poor, and persons under quarantine surveillance, and may provide for such quarantined persons necessary attendants, nurses, medicine and support until convalescent. The board shall have exclusive control of their appointees, and define their duties and fix their salaries; and all such appointees shall serve during the pleasure of the board."

It will be observed that the duties of the appointee or health officer are not prescribed by statute. He is the servant of the board of health that makes the appointment. He is under their absolute control and direction; and in addition to that, they fix his salary. His salary is at the will of the board of health. His term of office is at their will; they may terminate it at their p'eas-ure.

Then the question will arise, if that be so, does such a person hold the office for a term? Is there any limit to it, to which he may claim by virtue of his appointment? We think not.

It being then exclusively within the discretion and power of the board of health to fix his salary, there is no reason why it may not be changed at any time at the pleasure of the board, whenever necessity would seem to require it. And there would be wisdom in such a provision. Such an officer as this, the duties required of him not being fixed and laid down by the law, but are fixed and determined by the board of health, we can see very good reason why his services to-day, or for a week or month, might be much greater than at other times, dependent upon the condition and purposes for which the office is created, namely, to take care of these persons that require help, and for whom it is the duty of the board to provide. Now, that being the nature. of the employment, perhaps it is a misnomer here to call him

170    CIRCUIT COURT REPORTS—NEW SERIES.

State, ex rel Miller, v. Council of Massillon. [Vol. II, N. S.

officer at all. He is more like an employe or servant of the board of health. Then, if the board of health has the exclusive right to fix his duty, determine the length of time he shall serve them, fix his salary, when they act on that matter, it is then in compliance with the statute fixing the liability of somebody to pay. So we hold that in this case as a fact, that the health office here was not such an office as would come within the purview of Section 1717, Revised Statutes; that it is such an office that the salary is not fixed, and is liable to be changed at the will or pleasure, and the necessity as it may be looked upon and seen by the board of health.

While we are on this branch of the case we want to make a further observation that will be pertinent to the next question. It is not discretionary with the board of health whether they will have a health officer or not. It is mandatory. It requires that they shall have one. The board of health shall appoint this health officer, and then provide how he shall be governed under their authority and direction.

Then we might further observe the purpose of this statute. We think this is a mandatory statute to create this office. We think it mandatory and for the interest and benefit not of a local place entirely, that is of a city or village, but it is such a requirement, or police regulation of the state, that would benefit the state and the citizens at large, that there be somebody to take control and be responsible for conditions that may arise as contemplated by this statute. This will also bear on the next question that we will consider.

This law and the establishment of a board of health is a police regulation, and may be so characterized. It is mandatory, and the Legislature has imposed this duty, and the council of each city is required to establish such a board. If so, then the council are to perform certain duties, and certain officers that may be appointed and employed are not to serve the public gratuitously. Their services are to be fixed and regulated by the board thus created. Then the council's duties are pointed out by statute, Section 2140, Revised Statutes, as follows:

"When expenses are incurred by the board of health, under the provisions of this chapter, it shall be the duty of the council, upon application and certificate from the board of health, to pass

the necessary appropriation ordinances to pay the expenses so incurred and certified; and the council is hereby empowered to levy, subject to the restrictions contained in the ninth division of this title, and set apart the necessary sum to carry into effect the provisions of this chapter.''

There are some further duties that are also mandatory. It is not left discretionary with the council when these expenses have been incurred. Such expenses as are contemplated by Section 2115, Revised Statutes, the services and salary of a health officer, these are expenses that are contemplated or may be contemplated under this section of the statute. These expenses have been incurred, and they have been certified, and it is the duty now of the council to make provision for them, and they have refused so to do. The contention, or legal excuse offered why the council will not pay was, that there was no contract made for the employment of this health officer, as required by Section 2702, Revised Statutes, namely, ''that no contract or obligation shall be entered into for the disbursement of public funds unless the proper officer certifies the funds on hand for the payment of such contract or such obligation.'' That is the one and only vital question we have in this case. Then the first inquiry would arise, is the service of this officer such as is contemplated by the law as coming within the provisions of Section 2702, Revised Statutes? If not, then that objection by the council for not making the appropriation will not avail. We think that that question has been decided, yet we know there is some uncertainty about it. We think that the case of *Wilson* v. *Cincinnati,* 19 Bull., 10, is significant and pertinent to the question we have now under consideration. Peck, J., says:

''This is an action to recover rent claimed to be due from the city for the use of a building known as the Armory building, situated on Court street. Under an act of the Legislature requiring the city of Cincinnati to provide an armory for the militia, the city authorities made a lease of the building for the term of five years, and put the first regiment in possession, and! the regiment continued in possession during the term of the lease, and for a large part of the term the city paid the rent.''

Toward the latter part of the term the finances of the city got into such a condition that there was no money to pay the rent,

172    CIRCUIT  COURT  REPORTS—NEW  SERIES.

State, ex rel Miller, v. Council of Massillon.  [Vol. II, N. S.

and then certain questions were raised as to the validity of the contract of lease, under what are known as the Worthington and Burns laws, Sections 2699, 2702.

Those questions were reserved on demurrer to the general term, and there it was decided that the allegation that when the lease was made there was no money in the city treasury specially set apart to meet the expenditure to be incurred under it, did not constitute a defense, because the act under which the lease was made (74 O. L., 235, now Section 3085, Revised Statutes), is mandatory, and requires the city to provide an armory for the militia and pay the expenses of the same, while providing no method of raising funds therefor.

We think that the statute we are considering is just as mandatory upon the board of health.  That is, not only mandatory upon the city council to create the board of health, but it is equally mandatory upon the board of health to create the office of health officer and to fix his salary, etc.  These are things which the Legislature of the state has required shall be done; and if they are done and the expenses have been incurred, then what is the duty of council under Section 2140, Revised Statutes?  That they must make appropriation to meet this expense.  There is no discretion in it, and it is not a subject of contract, but is a mandatory duty cast upon the board by the state, and they owe that duty to the state.

Without taking more time we are inclined to that view, although we feel the force of the arguments that have been made against this proposition.  It is not as clear and free from doubt as we would like to have the question.  But we may make this further observation—this court is somewhat committed to this line of decisions whether right or wrong.  We had a case in Newark at our last term, when the smallpox was prevalent in that city.  A physician had been selected and detailed to take charge of the smallpox patients.  One of the questions in that case was the undue action of the board, and the question was raised whether a majority of the board, a quorum, could make such arrangements.  We held in that case that they could, and we think the authorities bore us out in that conclusion.  That question is perhaps out of this case, but if it were in, we would

hold in this case, that it was of such a character that a majority of the board would be competent to make arrangements for the appointment of this officer and prescribe his duties and fix his salary. But the principal question in that case was, after he had incurred these expenses, and the services had been faithfully rendered, and there was no dispute as to the amount, when it was certified to the council of the city of Newark, they refused to pay it or make appropriation for it. Suit in mandamus was brought, and the question as to there being no certificate that the fund was in the treasury for the payment of these services was raised. Upon full consideration at that time we came to the conclusion that that was not necessary, it was not such a case as came within the purview of the section of the statute that I have already referred to. So we issued a peremptory writ of mandamus to compel the city council of Newark to make an appropriation to pay the services of this physician. That case is in the Supreme Court. If we were right then we are right now. If wrong then, perhaps we are equally wrong now. It is the duty of the court to be consistent and take chances of reversal, and we will render the same judgment and decree we did there—a peremptory writ will be issued, and costs to follow.

*A. A. Thayer* and *Mr. Young,* for plaintiff.

*A. Pomerene* and *Solicitor Howell,* for defendant.